## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DR. KENNETH TAYLOR,** | : | **CIVIL ACTION NO. 1:20-CV-1363** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DERRY TOWNSHIP SCHOOL** | : | |
| **DISTRICT; DONNA CRONIN, in her** | : | |
| **individual and official capacity;** | : | |
| **LINDSAY DREW, in her individual and** | : | |
| **official capacity; MARIA MEMMI, in** | : | |
| **her individual and official capacity;** | : | |
| **TERRY SINGER, in his individual and** | : | |
| **official capacity; TRICIA STEINER, in** | : | |
| **her individual and official capacity;** | : | |
| **DAVID OBENSTINE, in his individual** | : | |
| **capacity; JOHN/JANE DOE 1-10,** | : | |
| **fictitious individuals; and ABC** | : | |
| **ENTITIES 1-10, fictitious entities,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Plaintiff Dr. Kenneth Taylor filed this action against his former employer, the Derry Township School District ("the District"); six members of the Derry Township School District Board ("School Board") of Directors, Donna Cronin, Lindsay Drew, Maria Memmi, Kathy Sicher, Terry Singer, and Tricia Steiner (collectively "Defendant Directors"); and one private citizen, David Obenstine. Taylor alleges the defendants deprived him of his constitutional procedural due process rights and tortiously damaged his reputation. The District, Defendant Directors, and Obenstine each move to partially dismiss Taylor's amended complaint pursuant Federal Rule of Civil Procedure 12(b)(6). We will grant in part

and deny in part the District's motion, grant in part and deny in part the Defendant Directors' motion, and deny Obenstine's motion.

## I.   **Factual Background & Procedural History**

Taylor served as the head girls' varsity lacrosse coach for Hershey High School in the District from January 2013 to June 24, 2019.  (See Doc. 35 ¶¶ 1, 21). The instant lawsuit arises from the events surrounding the School Board's decision to part ways with Taylor after the 2018-2019 lacrosse season.

Taylor's first six years as head coach were a time of significant success for the girls' varsity lacrosse team.  The team won the conference and district championships in 2018 and was runner-up in the 2014, 2015, and 2017 conference championships.  (See id. ¶ 20).  The team also placed numerous players on various conference, regional, and national all-star lists.  (See id.)  The conference named Taylor coach of the year in 2017 and 2018.  (See id.)

In January of 2019, an unnamed member of the School Board informed Hershey High School's athletic director a non-specific accusation had surfaced regarding Taylor being "sexually inappropriate" with a female lacrosse player.  (See id. ¶ 54).  The accusation did not originate with the unnamed school director but was supposedly brought to their attention by a second school director who heard the accusation from the player's parent.  (See id.)  Taylor alleges the accusation was false and fabricated by another school director—Cronin—as a means of displacing Taylor as head coach.  (See id. ¶ 28).  Cronin purportedly coveted the head coach position for herself, (see id. ¶¶ 35-37), was a persistent critic of Taylor's coaching, (see id. ¶¶ 42, 51-52), and had a history of using her position on the School Board to

interfere with the girls' lacrosse program and to undermine Taylor's authority, (see id. ¶¶ 30-49, 85).

In the wake of the accusation, the athletic director, after conducting an inconclusive investigation and consulting with the superintendent, asked Taylor for his resignation. (See id. ¶¶ 58-62). Taylor denied the accusation but chose to resign anyway on February 18, 2019, to allow the team to move forward. (See id. ¶ 62). However, after Taylor's resignation, the lacrosse players and their parents inundated the athletic director with statements of support for Taylor and complaints about his "forced" resignation. (See id. ¶¶ 63-65). The athletic director held a meeting with Taylor on February 22, 2019, during which the athletic director accepted Taylor's recission of the resignation and reinstated Taylor. (See id. ¶ 66). At the meeting, the athletic director explained Cronin had misled him and directed him to remove Taylor. (See id.)

Cronin's alleged campaign to remove Taylor did not end with Taylor's reinstatement. Taylor claims Cronin conspired with her fellow school director, Drew, and a parent of a lacrosse player, Obenstine, to malign Taylor for the purpose of terminating his tenure as the girls' varsity lacrosse coach. (See id. ¶¶ 28-29, 57). To this end, Cronin began soliciting negative information about Taylor. (See id. ¶ 68). The complaint alleges that when individuals denied they possessed any such information, Cronin falsely accused Taylor of inappropriate conduct, demanding the individuals to confirm the accusations. (See id. ¶¶ 68, 70). Drew purportedly solicited false and denigrating information, and he falsely accused Taylor of inappropriate conduct with a female player in a conversation with a community

resident in a way that carried with it the implication of criminality.  (See id. ¶¶ 67, 70).  Obenstine allegedly added to the campaign by angrily expressing "unfounded" concerns about the safety of the players at a meeting with parents and sent a series of emails to the athletic director and Taylor accusing the District of covering up Taylor's inappropriate conduct.  (See id. ¶¶ 74-75).

Despite the ongoing controversy, the girls' varsity lacrosse team ended the 2018-2019 season on May 15, 2019, with a 17-3 record and won their second consecutive conference championship.  (See id. ¶ 81).  The athletic director gave Taylor his end-of-the-year evaluation on June 19, 2019.  (See id. ¶ 82).  The evaluation was extremely positive.  (See id.)

On June 24, 2019, the School Board held a meeting to vote, *inter alia*, on the retention of coaches for the upcoming year.  (See id. ¶ 83).  At the meeting, Cronin initiated a motion to disapprove the retention of Taylor.[1]  (See id. ¶ 84).  The motion passed six to three with Defendant Directors voting in favor of the motion.  (See id. ¶¶ 27, 85).  The only justifications the School Board gave at the meeting were non-specific accusations of emotional abuse and inappropriate conduct.  (See id. ¶ 87).  The School Board did not give Taylor notice of the precise facts underlying the

---

[1] Taylor describes the ending of his tenure as the girls' varsity lacrosse coach as a "termination" or "removal."  (See Doc. 35 ¶¶ 1, 26, 29, 66, 139, 144-145, 153, 161, 168-169; Doc. 46 at 19).  Based on the facts of the complaint, we find both terms to be misnomers.  Taylor was appointed for only the 2018-2019 school year.  (See Doc. 35 ¶ 123).  The June 24, 2019 vote came after the end of the 2018-2019 lacrosse season and after the athletic director gave Taylor his "end of the year evaluation." (See id. ¶¶ 81-82).  On the pleadings, the more accurate description is that the School Board voted not to retain Taylor.

accusations against him.  (See id. ¶¶ 86, 88).  Nor did the District or School Board afford Taylor a hearing on the accusations.  (See id.)  Taylor submitted a right-to-know request to the District shortly after the vote asking for specifics of the accusations.  (See id. ¶ 89).  The District declined the request by email on August 8, 2019.  (See id. ¶ 91).

Taylor remained popular with the players and their parents, even after the School Board's vote.  (See id. ¶ 92).  When the District began searching for a new girls' varsity lacrosse coach for the 2020 season at the end of the summer, Taylor reapplied for his old position at the request of the athletic director.  (See id. ¶¶ 93-95).  The athletic director interviewed Taylor for the position on September 24, 2019 and recommended the School Board rehire him.  (See id. ¶ 96).  The School Board rejected that recommendation on October 7, 2019.  (See id. ¶ 97).  The vote was once again six to three, with Defendant Directors all voting against the rehiring of Taylor.  (See id. ¶¶ 97-98).

Taylor avers Cronin, Drew, and Obenstine made a series of false accusations against him to the other school directors for the purpose of ensuring that he was not rehired.  (See id. ¶¶ 100-104, 133).  According to the amended complaint, Cronin made unspecified inflammatory accusations against Taylor, (see id. ¶ 103); Drew falsely accused Taylor of bullying players, emotionally abusing players to the point of self-harm, engaging in sexually inappropriate conduct, and possibly shoving a player, (see id. ¶ 101); and Obenstine repeated Drew's accusations and accused Taylor of being abusive, (see id. ¶¶ 102, 133).  Similarly, Drew and Cronin also

continued to make negative statements about Taylor and recruited individuals to buttress their false accusations.  (See id. ¶ 104).

Taylor filed the present lawsuit against the District; the Defendant Directors, each in their official and individual capacities; and Obenstine, in his individual capacity, on August 3, 2020.[2]  Taylor filed an amended complaint on December 8, 2020.  The District, Defendant Directors, and Obenstine all move to dismiss Taylor's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.  The motions are fully briefed and ripe for disposition.

## II.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

---

[2] Taylor also names ten fictitious persons, John/Jane Does 1-10, and ten fictitious organizations, ABC Entities 1-10 as defendants.  Taylor has not yet identified or served these defendants.

Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court conducts a three-step inquiry.  See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

### III.  Discussion

Taylor asserts six claims against the moving defendants.  He asserts two claims under 42 U.S.C. § 1983 against the District and Defendant Directors for depriving him of his procedural due process rights (Counts I and II).  He also asserts various state-law tort claims against Cronin, Drew, and Obenstine (Counts III-VI).  We begin with Taylor's Section 1983 claims.

#### A.    Counts I and II: Section 1983 – Procedural Due Process

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials.  42

U.S.C. § 1983.  The statute is not a source of substantive rights but serves as a mechanism for vindicating rights otherwise protected by federal law.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 96 F.3d 119, 1204 (3d Cir. 1996).  To establish Section 1983 liability, a plaintiff must prove a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).  Neither the District nor the Defendant Directors dispute their status as state actors.  (See Doc. 40 at 6; Doc. 41 at 10-14).  Our sole inquiry is whether Taylor has pled that these defendants violated his constitutional rights.

In the case *sub judice*, Taylor asserts the District and the Defendant Directors deprived him of his procedural due process rights under the Fourteenth Amendment to the United States Constitution.  To plead this claim, Taylor must allege (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures afforded him did not provide due process of law.  See Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006).  Taylor asserts the District and the Defendant Directors deprived him of both a liberty interest (Count I) and a property interest (Count II).

### 1.　　*Count I: Procedural Due Process – Liberty Interest*

In Count I, Taylor claims the District and the Defendant Directors, both in their official and individual capacities, deprived him of a liberty interest in

the form of his reputation.  (See Doc. 35 ¶¶ 107-118).  We will address the
defendants' arguments for dismissal *seriatim*.

### a.  Official Capacity Claims

Directors Cronin, Drew, Memmi, Sicher, Singer, and Steiner seek
dismissal of Taylor's Section 1983 claim against them in their official capacities
as they are duplicative of Taylor's claim against the District.  (See Doc. 41 at 9).
A court may dismiss official-capacity claims against individual defendants
when identical claims are brought against the public entity employing them.
See Cuvo v. De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006) (nonprecedential).
The rationale behind this approach is that "a lawsuit against public officers in
their official capacities is functionally a suit against the public entity."  Id.
(citing McMillian v. Monroe County, 520 U.S. 781 (1997)).  Our court has
previously dismissed redundant official-capacity claims in circumstances
indistinguishable from those presented here.  See, e.g., Doe by Brown v.
Harrisburg Sch. Dist., No. 1:19-CV-1027, 2020 WL 4584372, at *3 (M.D. Pa. Aug.
10, 2020) (Conner, J.) (dismissing official-capacity claim against school
administrators when plaintiffs asserted identical claims against school district);
Judge v. Shikellamy Sch. Dist., 135 F. Supp. 3d 284, 301 (M.D. Pa. 2015) (Brann,
J.) (same); M.S. *ex rel.* Hall v. Susquehanna Twp. Sch. Dist., 43 F. Supp. 3d 412,
419 (M.D. Pa. 2014) (Kane, J.) (same).

Taylor's Section 1983 claims against the Defendant Directors in their
official capacities duplicate his claims against the District, and Taylor offers no
persuasive justification for retaining both.  The court will grant the Defendant

Directors' motion and dismiss these claims.  Leave to amend will be denied as futile.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

### b.   **Merits**

Taylor alleges the District and the Defendant Directors deprived him of his liberty interest in his reputation when they decided not to rehire him under circumstances creating a defamatory impression.  (See Doc. 35 ¶¶ 107-118). Deprivation of one's reputation can sustain a Section 1983 claim but only under narrow circumstances.  See Hill, 455 F.3d at 236.  To bring a claim, the plaintiff must satisfy the "stigma-plus test" by alleging "a stigma to his reputation *plus* deprivation of some additional right or interest."  Id. (emphasis in original).  The stigma-plus test requires the plaintiff allege a state employer created a false and defamatory impression (the "stigma") about the plaintiff in connection with the plaintiff's termination (the "plus").  Id. (citing Codd v. Velger, 429 U.S. 624, 628 (1977)).  When a public employee satisfies the stigma-plus test, the employee is entitled to a name-clearing hearing.  Id.

### i.   **The District**

The District argues Taylor's first Section 1983 claim should be dismissed because Taylor lacks a sufficient property interest in his continued employment to satisfy the plus component of the stigma-plus test.  (See Doc. 40 at 6-7).  The District misunderstands the breadth of circumstances included within the definition of "termination" under the stigma-plus test.  The test does not require a plaintiff to show a recognized property interest in their ongoing employment.  See Hill, 455 F.3d at 238-39; see also Bd. of Regents of

State Colleges v. Roth, 408 U.S. 564, 573 (1972) (suggesting nonrenewal of contract, if coupled with stigmatizing statements, would support procedural due process claim).  The point of allowing procedural due process claims based on stigmatization is to protect the public employee's reputation—sullied by the circumstances of their termination—by affording the plaintiff the opportunity to clear their name via a public hearing, not to protect any property interest the plaintiff might have possessed.  See Hill, 455 F.3d at 238 (quoting Doe v. U.S. Dep't of Just., 753 F.2d 1092, 1108 n.15 (D.C. Cir. 1985)).  As noted by our court of appeals, requiring a plaintiff to plead a "state law-created property interest in continued employment to satisfy the 'plus' in a 'stigma-plus' claim" would "equate the interests protected by the *property* clause of the [Fourteenth A]mendment with those protected by the *liberty* clause."[3]  Id. at 236 (emphasis in original).  We will deny the District's motion to dismiss Count I.

---

[3] The District also argues Taylor's position, a part-time job paying only a nominal salary, is effectively *de minimis* and therefore cannot satisfy the plus component of the stigma-plus test.  (See Doc. 40 at 8-9).  To support this contention, the District cites a decision by the Seventh Circuit Court of Appeals which held a public employee fired from "a part-time, honorific job" could not create sufficient stigma to sustain a Section 1983 procedural due process claim because the plaintiff retained their primary means of earning a livelihood.  See Jungels v. Pierce, 825 F.2d 1127, 1131 (7th Cir. 1987).  The Third Circuit has cited Jungels favorably but only in support of the proposition that termination of a volunteer position could not satisfy the plus component of the stigma-plus test.  See Versarge v. Township of Clinton N.J., 984 F.2d 1359, 1371 (3d Cir. 1993).  Nonetheless, even if we were to adopt the Jungels holding, Taylor's claim would still survive a motion to dismiss because the allegedly false statements made about Taylor are so salacious—especially the accusation Taylor may have engaged in inappropriate sexual conduct with a female player—that the stigma would damage his future employment prospects in other fields.  See Robb v. City of Philadelphia, 733 F.2d 286, 294 (3d Cir. 1984).

### ii.   **Directors Memmi, Sicher, Singer, and Steiner**

Directors Memmi, Sicher, Singer, and Steiner argue Taylor's Section 1983 claim against them in their individual capacities should be dismissed because Taylor fails to plead sufficient facts to satisfy the stigma component. (See Doc. 41 at 10-13).  Satisfying the stigma component requires the plaintiff allege the purportedly stigmatizing statement was (1) published, (2) substantially and materially false, and (3) infringed upon the "reputation, honor, or integrity" of the employee.  See Hill, 455 F.3d at 236; Brown v. Montgomery County, 470 F. App'x 87, 91 (3d Cir. 2012) (nonprecedential) (citing Ersek v. Township of Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996)).

Taylor does not allege that Directors Memmi, Sicher, Singer, and Steiner made any false statements regarding his conduct or promulgated a false impression about himTaylor.  (See Doc. 35 ¶¶ 83-88, 97-98, 111).  They merely cast votes against retaining Taylor on June 24, 2019, (see id. ¶¶ 27, 85), and rehiring Taylor on October 7, 2019, (see id. ¶¶ 97-98).  Taylor cites no decisional law equating a mere vote to a false statement or acknowledging a vote as creating a false impression.  Nor does Taylor provide any authority supporting his contention that ignoring Cronin and Drew's "perfidy" can possibly satisfy the stigma component of the stigma-plus test.  (See Doc. 46 at 12 n.2).

We will grant Memmi, Sicher, Singer, and Steiner's motion to dismiss Count I. [4]  We will grant Taylor leave to amend because Taylor could plausibly plead facts showing Memmi, Sicher, Singer, and Steiner created a false impression about him.  See Grayson, 293 F.3d at 108.

### iii.    **Director Drew**

Unlike Memmi, Sicher, Singer, or Steiner, the amended complaint alleges that Drew made false statements maligning Taylor.  Specifically, it alleges that Drew made a statement in February of 2019 to a community resident accusing Taylor of engaging in inappropriate conduct with female players, prompting the resident to ask why police were not immediately notified of Taylor's conduct.  (See Doc. 35 ¶ 67).  The amended complaint also alleges that Drew made negative statements throughout the summer of 2019 and again on October 7, 2019, when the School Board met and rejected the athletic director's proposal to rehire Taylor.  (See id. ¶¶ 100-101).  In her various statements, Drew allegedly accused Taylor of bullying players, emotionally abusing players to the point of self-harm, engaging in

---

[4] Directors Memmi, Sicher, Singer, and Steiner also argue, in the alternative, Taylor's Section 1983 claim against them is barred by qualified immunity.  (See Doc. 41 at 13-14).  As we have already granted dismissal of Count I against these defendants, we need not reach this question.

inappropriate—presumably sexually harassing or sexually abusive—conduct with a player, and possibly shoving another player.[5]  (See id.)

Drew's February 2019 statement, which took place almost five months before the School Board voted not to retain Taylor, is too attenuated to satisfy the stigma component of the stigma-plus test.  See Paul v. Davis, 424 U.S. 693, 710 (1976) (holding "the defamation [must] occur in the course of the termination of employment").  Drew's other statements, including those made during the June and October School Board meetings, compel a different result.  These statements go well beyond run-of-the-mill criticism.  Drew allegedly accused Taylor of abusing players to the point of self-harm, being sexually inappropriate with a player, and possibly assaulting a player.  (See Doc. 35 ¶ 101).  Such statements are deeply stigmatizing and, if taken as true by the public, difficult or even impossible to escape.  See Mercer, 308 F.3d at 845 (accusations of "dishonesty, immorality, criminality, racism, and the like" are sufficient to satisfy the stigma-plus test).  The stigma component of the stigma-plus test is satisfied.  Hence, we will not dismiss Count I against Drew.

## 2.    *Count II: Procedural Due Process – Property Interest*

Taylor also brings a Section 1983 claim against the District and the Defendant Directors for depriving him of a property interest without due

---

[5] Taylor does not specify which statements were made at which point in time.  (See Doc. 35 ¶¶ 100-101).  We construe the complaint in the light most favorable to Taylor, and we assume that these statements were made or repeated at relevant times identified in the amended complaint.  See Phillips, 515 F.3d at 233.

process of law.[6]  (<u>See</u> Doc. 35 ¶¶ 119-141).  The District and the Defendant

Directors move to dismiss, arguing Taylor lacks a property interest in his

continued employment under Pennsylvania law.  (<u>See</u> Doc. 40 at 9-11; Doc. 41

at 15-17).

As discussed *supra*, the stigma-plus test requires a plaintiff to plead both

stigma to their reputation and deprivation of some additional right or interest.

<u>See</u> <u>Hill</u>, 455 F.3d at 236.  State law defines property interests for the purposes

of Fourteenth Amendment due process.  <u>See</u> <u>Larsen v. Senate of</u>

<u>Commonwealth of Pa.</u>, 154 F.3d 82, 92 (3d Cir. 1998) (citing <u>Roth</u>, 408 U.S. at

569, 577).  Taylor asserts Section 514 of Pennsylvania's Public School Code

---

[6] Taylor does not specify in his amended complaint whether he is bringing his procedural due process claim in Count II under Section 1983 or the Pennsylvania Constitution.  (<u>See</u> Doc. 35 ¶¶ 119-141).  In his opposition brief to the Defendant Directors' motion to dismiss, he refers to the claim as a Section 1983 claim.  (<u>See</u> Doc. 46 at 17).  But in his opposition brief to the District's motion to dismiss, he references it as a state constitutional claim.  (<u>See</u> Doc. 47 at 18).  Taylor's plea for relief in Count II focuses exclusively on damages.  (<u>See</u> Doc. 35 at 27). Commonwealth of Pennsylvania law holds that neither the state constitution nor any state statute authorizes the award of monetary damages for a violation of the Pennsylvania Constitution.  <u>See</u> <u>Moss v. Pennsylvania</u>, 838 F. App'x 702, 708 (3d Cir. 2020) (nonprecedential) (citing <u>Jones v. City of Philadelphia</u>, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006)); <u>Balletta v. Spadoni</u>, 47 A.3d 183, 192-93 (Pa. Commw. Ct. 2012).  Hence, we will construe Taylor's claim as a Section 1983 claim as it provides the only opportunity for the relief he seeks.

conveys to him a property right in his expectation of continued employment.[7]
(See Doc. 35 ¶ 129).  Section 514 requires Pennsylvania school districts to give
employees due notice, a statement of reasons, and the opportunity for a
hearing before the district can "remove" the employee on account of
"incompetency, intemperance, neglect of duty, violation of any of the school
laws of this Commonwealth, or other improper conduct."  24 PA. STAT. AND
CONS. STAT. ANN. § 5-514; Coleman v. Bd. of Ed. of Sch. Dist. of Phila., 383 A.2d
1275, 1280 (Pa. 1978).

Section 514 creates a property right in a nonprofessional employee's
expectation of continued employment and obligates school boards to comply
with the procedural safeguards therein when dismissing an employee for
cause.  See Lewis v. Sch. Dist. of Phila., 690 A.2d 814, 817 (Pa. Commw. Ct.
1997).  Even part-time coaches, like Taylor, can be protected by Section 514.
See Cambria v. Bd. of Sch. Directors of Exeter Twp. Sch. Dist., No. 240 C.D.
2013, 2014 WL 1758467, at *6 (Pa. Commw. Ct. Apr. 30, 2014) (nonprecedential).
Section 514 can also apply when an employee lacks an express contract but is
appointed to a position by a school board on an annual basis.  See Kapustik,

---

[7] Taylor also argues he has a property right to continued annual employment
under Kapustik v. School District of City of Arnold, 111 A.2d 169 (Pa. Super. Ct.
1955), but Kapustik grants him no such right.  In Kapustik, the plaintiff possessed a
property right, despite not having a written contract.  She was appointed by the
school board to her position for the entire school year but dismissed *before* the
expiration of her term.  See id. at 170-173.  The holding in Kapustik is not applicable
to Taylor because Taylor had completed his term at the time of the non-retention
vote.  (See Doc. 35 ¶¶ 27, 81-82, 85, 123).

111 A.2d at 171-73. However, the property right created by Section 514 is contingent on application of the procedural protections described in Section 514. See Dingel v. Commonwealth, State Emp. Ret. Sys., 435 A.2d 664, 668 (Pa. Commw. Ct. 1981); see also Lewis, 690 A.2d at 817 (citing Dingel, 435 A.2d at 668). Under Pennsylvania law, an employee must be "removed" to trigger these procedural protections. See Moriarta v. State Coll. Area Sch. Dist., 601 A.2d 872, 873-74, 874 n.6 (Pa. Commw. Ct. 1992). Unlike Taylor's liberty-interest claim, discussed *supra,* the "termination [of a school employee] at the expiration of a contract" does not constitute removal under Section 514. Id.

Taylor's appointment was for the 2018-2019 school year. (See Doc. 35 ¶ 123). The School Board voted against retaining Taylor as the girls' varsity lacrosse coach only after the expiration of his appointment. (See id. ¶¶ 27, 81-82, 85). Consequently, Section 514 is not implicated, and Taylor does not possess a property right in his expectation of continued employment. See Moriarta, 601 A.2d at 873-74. Without a state-law property right, Taylor's continued employment is not protected by the due process clause of the Fourteenth Amendment.

Taylor asserts new facts in his opposition brief which may cure the defect identified herein; specifically, alleging he was dismissed *before* his appointment ended. (See Doc. 47 at 20); see also Commonwealth of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)). Accordingly, we will dismiss Count II in its

entirety but allow Taylor the opportunity to amend his complaint to incorporate these new factual allegations. See Grayson, 293 F.3d at 108.

### B.     Counts III, IV, V, and VI – State-Law Claims

Taylor brings the following state law tort claims against Drew, Cronin, and Obenstine: civil conspiracy (Count III), tortious interference (Count IV), false light (Count V), and defamation (Count VI).  Obenstine moves to dismiss all four state law claims.  Drew and Cronin move to dismiss all but Count III.

### 1.     *Counts III, IV, V, and VI Against Obenstine*

Obenstine contends we should dismiss Count III, IV, V, and VI against him because each claim is legally deficient as pled.  Taylor's civil conspiracy claim in Count III is derivative of his underlying tort claims in Counts IV, V, and VI.  Therefore, we address the underlying tort claims first.

### a.     Count IV – Tortious Interference

Pennsylvania adopts the elements of a tortious interference claim defined in the Restatement (Second) of Torts § 766.  See Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 659 (3d Cir. 1993); Glenn v. Point Park Coll., 272 A.2d 895, 897-99 (Pa. 1971); Thompson Coal Co. v. Pike Coal Co., 412 A.2d 466, 470-71 (Pa. 1979).  Pennsylvania recognizes two categories of tortious interference: tortious interference with existing contractual relationships and tortious interference with prospective contractual relationships.  See Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009).  Taylor asserts Obenstine, in conjunction with Drew and Cronin, committed both torts by orchestrating a smear campaign targeted at Taylor for the purpose of

ousting him from his coaching position and preventing him from being rehired.  (See Doc. 35 ¶¶ 152-156).

To state a claim for tortious interference with an existing contractual relationship, a plaintiff must plead (1) the existence of a contractual relationship; (2) purposeful action by the defendant intended to harm the relationship which induced a third party to breach or otherwise not perform the contract; (3) the absence of some privilege or justification protecting the defendant's conduct; and (4) actual damage to the plaintiff as a result of that conduct.  See Acumed, 561 F.3d at 212; Al Hamilton Contracting Co. v. Cowder, 644 A.2d 188, 191 (Pa. Super. 1994).  Taylor does not allege the smear campaign resulted in either Taylor or the District breaching the terms of his appointment.  (See Doc. 35 ¶¶ 152-156).  Hence, Taylor has not pled facts sufficient to sustain a claim for tortious interference with existing contractual relationships.  See Dommel Props. LLC v. Jonestown Bank & Tr. Co., 626 F. App'x 361, 367 (3d Cir. 2015) (nonprecedential) (finding Pennsylvania case law requires plaintiffs to allege breach).  To state a claim for tortious interference with prospective contractual relations under Pennsylvania law, a plaintiff must plead (1) the existence of a prospective contractual relationship; (2) purposeful action by the defendant intended to prevent the prospective contractual relationship from forming; (3) the absence of some privilege or justification protecting the defendant's conduct; and (4) actual damage to the plaintiff as a result of that conduct.  See Acumed, 561 F.3d at 212; Glenn, 272 A.2d at 898.  A prospective contractual relationship is "something less than a contractual

right, something more than a mere hope." Thompson, 412 A.2d at 471.  The

standard is an objective one, namely, whether the allegations establish a

"reasonable probability" a contract would have arisen absent the defendant's

interference.  See id. (quoting Glenn, 272 A.2d at 897).

The athletic director's recommendation the School Board rehire Taylor

squarely gives rise to a reasonable probability the School Board would have

hired Taylor but for the alleged smear campaign.  (See Doc. 35 ¶ 96).  Taylor

avers that Obenstine carried out the campaign for the purpose of preventing

his rehiring as the girls' varsity lacrosse coach.  (See id. ¶¶ 153-154), and there

is no reasonable justification for Obenstine's alleged interference based upon

the *allegata*.  Taylor also asserts actual damages: the School Board's decision

not to rehire his coaching services resulted in a loss of income.  (See id. ¶ 155).

Taylor has pled sufficient facts to a state plausible claim for tortious

interference with a prospective contractual relationship.  We will deny

Obenstine's motion to dismiss Count VI to the extent it relates to Taylor's

tortious interference with a prospective contractual relationship.  Taylor

asserts additional factual allegations in his opposition brief that indicate the

School Board may have breached the terms of his appointment.  (See Doc. 47

at 20).  Hence, we will grant Taylor leave to amend this claim.  See Grayson,

293 F.3d at 108.

### b.   <u>Count V – False Light</u>

False light is one of four torts Pennsylvania recognizes as protecting

individuals from invasions of privacy.  See Graboff v. Colleran Firm, 744 F.3d

128, 136 (3d Cir. 2014) (citing Marks v. Bell Tel. Co., 331 A.2d 424, 430 (1975)).

Pennsylvania derives the definition of false light from the Restatement

(Second) of Torts and imposes liability on defendants who publish material

that "is not true, is highly offensive to a reasonable person, and is publicized

with knowledge or in reckless disregard of its falsity." Id.; Larsen v. Phila.

Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988) (*en banc*) (citing

RESTATEMENT (SECOND) OF TORTS § 652E (AM. L. INST. 1977)).  Pennsylvania

courts give a broad reading to the idea of falsity.  Falsity encompasses not only

untrue statements but also "selectively printed or broadcast true statements or

pictures . . . which create a false impression." Phila. Newspapers, 543 A.2d at

1189.  Even when a statement is true in the literal sense, it may be susceptible

to inferences casting an individual in a false light and thereby give rise to a

false light claim.  See id.  Nonetheless, the misrepresentation must be

sufficiently injurious that "serious offense may reasonably be expected to be

taken by a reasonable man in his position." RESTATEMENT (SECOND) OF TORTS

§ 652E, cmt. c (AM. L. INST. 1977)).

Obenstine contends his statements about Taylor, even if untrue, cannot

be read as casting Taylor in a false light offensive to a reasonable person.  (See

Doc. 42 at 23-25).  We are unpersuaded.  Taylor avers Obenstine repeated

Drew's accusations of bullying, emotionally abusing players to the point of self-

harm, possibly shoving a player, and possibly engaging in sexually

inappropriate conduct. (See Doc. 35 ¶¶ 101-102).  Obenstine also purportedly

accused Taylor of being abusive before, during, and after the 2019 lacrosse

season.  (See id. ¶ 133).  Such allegations, particularly when leveled at a high

school coach, are serious enough that a reasonable person could find them

highly offensive.  We will deny Obenstine's motion to dismiss Taylor's false

light claim.

### c.    Count VI – Defamation

Under Pennsylvania law, a plaintiff bringing a defamation claim must

allege (1) the communication was defamatory in nature, (2) the communication

was published by the defendant, (3) the communication applied to the plaintiff,

(4) the recipient of the communication understood its defamatory meaning and

its application to the plaintiff, and (5) the plaintiff suffered special harm as a

result of the communication's publication.  See 42 PA. CONS. STAT. § 8343(a);

Graboff, 744 F.3d at 135.  If the court determines at the outset the

communication in question is not capable of defamatory meaning, the claim

must be dismissed for failure to state a claim.  See Remick v. Manfredy, 238

F.3d 248, 261 (3d Cir. 2001).  However, dismissal is only appropriate when the

nondefamatory reading constitutes "the only reasonable interpretation of the

statement."  Hill v. Cosby, 665 F. App'x 169, 174 (3d Cir. 2016)

(nonprecedential) (citing Zartman v. Lehigh Cty. Humane Soc'y, 482 A.2d 266,

269 (Pa. Super. Ct. 1984)).

Obenstine contends his alleged statements are not capable of

defamatory meaning.  (See Doc. 42 at 7-14).  A defamatory statement is one

that "tends so to harm the reputation of another as to lower him in the

estimation of the community or to deter third persons from associating or

dealing with him." Remick, 238 F.3d at 261 (quoting Tucker v. Fischbein, 237 F.3d 275, 282 (3d Cir. 2001)). Statements that are "merely annoying or embarrassing" do not qualify as defamatory, nor do "rhetorical hyperbole or . . . vigorous epithet[s]." Beverly Enters., Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999) (quoting Kryeski v. Schott Glass Techs., Inc., 626 A.2d 595, 601 (Pa. Super. Ct. 1993)). Crucially, the statement must be capable of being proven false to give rise to a claim of defamation. See, e.g., Milkovich v. Lorain Journal Co., 497 U.S. 1, 19-20 (1990).

Taylor's amended complaint describes Obenstine making five negative statements about Taylor. Some of these statements are sufficient to sustain a defamation claim. Obenstine's accusations Taylor emotionally abused players to the point of self-harm and engaged in sexually inappropriate conduct clearly rise to the level of defamatory. (See Doc. 35 ¶¶ 101-102). Both statements, if taken to be true, are prone to lower the community's estimation of a high school coach. See Remick, 238 F.3d at 261. Similarly, Obenstine's statement about assaulting a player by shoving her could be read as defamatory. (See Doc. 35 ¶¶ 101-102). Obenstine also purportedly accused Taylor of being abusive. (See id. ¶ 133). Although only pled in vague terms, this statement could plausibly be read as defamatory. Abuse is a serious accusation to level at a high school coach—one likely to lower the coach's esteem in the community and can carry the connotation of criminality. See Remick, 238 F.3d at 261. We construe the complaint in a light most favorable to the nonmoving party. For

these reasons, we will thus deny Obenstine's motion to dismiss Taylor's defamation claim with respect to each of these statements.

In contrast, Obenstine's accusation Taylor bullied his players is too commonplace an accusation to constitute defamation.  (See Doc. 35 ¶¶ 101-102); see also Purcell v. Ewing, 560 F. Supp. 2d 337, 343-44 (M.D. Pa. 2008) (Conner, J.) (holding accusing a plaintiff of being a "bully" is not defamatory) (citing Beverly Enters., 182 F.3d at 187).  The same is true of Obenstine's angry expression of concern about player safety at a meeting between the parents of lacrosse players and the athletic director.  (See Doc. 35 ¶ 74).  Concerns about safety, without more, are simply not defamatory.  Obenstine also allegedly deflected a conversation away from the conduct of a particular lacrosse player and onto Taylor's supposed inappropriate conduct.  (See id. ¶ 79).  Deflecting a conversation is not defamatory.  Consequently, we will grant Obenstine's motion with respect to the bullying, player safety, and deflection statements.

### d.  **Count III – Civil Conspiracy**

To state a claim for civil conspiracy, a plaintiff must set forth the following allegations: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  Livingston v. Borough of Edgewood, 430 F. App'x 172, 178 (3d Cir. 2011) (nonprecedential) (quoting Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003)); see also Fiedler v. Spencer, 231 A.3d 831, 838 (Pa. Super. Ct. 2020), petition for

allowance of appeal denied, 241 A.3d 335 (Pa. 2020).  As a predicate to liability for civil conspiracy, the complaint must allege a distinct underlying tort.  See Muth v. Woodring, 755 F. App'x 109, 115 (3d Cir. 2018) (nonprecedential) (quoting Boyanowski v. Cap. Area Intermediate Unit, 215 F.3d 396, 405-406 (3d Cir. 2000)).

Obenstine argues Taylor's civil conspiracy claim is legally deficient because Taylor failed to successfully plead any underlying tort in the amended complaint.  (See Doc. 42 at 20-21).  As explained *supra*, Taylor successfully alleges three underlying torts: tortious interference with a prospective contract, false light, and defamation.  (See Doc. 35 ¶¶ 152-172).  Taylor also identifies the parties to the conspiracy (Drew, Cronin, and Obenstine), (see id. ¶ 143); their common purpose, (see id. ¶¶ 143-144); and numerous overt acts done in pursuance of that common purpose—including making false statements, (see id. ¶¶ 100-103, 133, 145), and soliciting false allegations, (see id. ¶¶ 29, 68, 70, 104).  Lastly, Taylor alleges legal damages in the form of lost income and injury to his reputation.  (See id. ¶ 150).  All the elements of a civil conspiracy claim are present in the facts pled.  We will deny Obenstine's motion to dismiss Count III.

### 2.  *Counts IV, V, and VI Against Drew and Cronin*

Pennsylvania grants high public officials absolute immunity from "all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice."  Smith v. Borough of Dunmore, 633 F.3d 176, 181 (3d Cir. 2011) (quoting Lindner v. Mollan, 677 A.2d

1194, 1195 (Pa. 1996)).  The purpose of the high public official immunity

doctrine "is not to benefit the official but to protect society's interest in the

unfettered discussion of public business."  Heller v. Fulare, 454 F.3d 174, 178

(3d Cir. 2006).  Pennsylvania school directors constitute high public officials.

See, e.g., Caristo v. Blairsville-Saltsburg Sch. Dist., 370 F. Supp. 3d 554, 563

(W.D. Pa. 2019) (collecting Third Circuit cases holding school board members

are high public officials); Cutler v. Bellefonte Area Sch. Dist., 97 F. Supp. 3d

586, 589 (M.D. Pa. 2015) (holding school board member is a high public official);

Kohn v. Sch. Dist. of City of Harrisburg, 817 F. Supp. 2d 487, 512 (M.D. Pa.

2011) (same); Zugarek v. S. Tioga Sch. Dist., 214 F. Supp. 2d 468, 479 (M.D. Pa.

2002) (same); Matta v. Burton, 721 A.2d 1164, 1166 (Pa. Commw. Ct. 1998)

(same).

   To receive the protections of this immunity, defendants' allegedly

tortious conduct must be closely related to the exercise of their official duties

and within the scope of their authority.  See Smith, 633 F.3d at 181-82;

McCormick v. Specter, 275 A.2d 688, 689 (Pa. Super. Ct. 1971).  For example,

high public official immunity protected defamatory statements made by a

mayor attacking a person in a press release.  See McKibben v. Schmotzer, 700

A.2d 484, 491-92 (Pa. Super. Ct. 1997).  But it did not protect a statement by

that mayor attacking the same person when made in conjunction with a

private legal proceeding.  See id. at 492.  Consequently, we must examine

whether Drew and Cronin's allegedly tortious conduct under each count was

closely related to their official public duties or whether they were acting as private citizens.

Pennsylvania courts focus on two factors when deciding if a particular line of conduct was closely related to a defendant's official duties: "(1) the formality of the forum in which the words were spoken or published, and (2) the relationship of the legitimate subject of governmental concern to the person seeking damages." Heller, 454 F.3d at 178 (citing Hall v. Kiger, 795 A.2d 497, 501 (Pa. Commw. Ct. 2002)). Drew and Cronin's statements during formal School Board meetings and votes on School Board decisions, even if false and malicious, are obviously protected by high public official immunity. See Heller, 454 F.3d at 179-80 (collecting cases demonstrating even accusations of explicitly criminal conduct are protected by high public official immunity). We will grant Drew and Cronin's motion to the extent Taylor's state-law claims are premised on actions taken by these defendants during official meetings of the School Board.

Taylor alleges certain conduct by Drew and Cronin, however, arguably undertaken outside of their official capacities. For example, Cronin allegedly contrived the original accusation that Taylor engaged in sexually inappropriate conduct. (See id. ¶¶ 28, 54-55). Drew and Cronin also allegedly solicited individuals outside of School Board meetings to provide false and denigrating information about Taylor. (See id. ¶¶ 28, 68, 70, 84, 104). Whether certain acts occurred within the scope of Drew and Cronin's official duties is a fact-specific determination better suited for resolution at the summary judgment stage or at

trial, on a fully developed record.  See, e.g., Ferrone v. Onorato, 439 F. Supp.

2d 442, 455 (W.D. Pa. 2006), aff'd, 298 F. App'x 190 (3d Cir. 2008)

(nonprecedential).

For the reasons set forth above, we will deny the motion to dismiss

Counts IV, V, and VI against Drew and Cronin as to Drew and Cronin's actions

outside of their official capacities.

## IV. <u>Conclusion</u>

We will grant in part and deny in part the pending motions to dismiss as set

forth more fully herein.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    January 7, 2022